# UNITED STATES DISTRICT COURT

for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of | )  Case No.20-sw-00685-GPG |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| INFORMATION ASSOCIATED WITH FACEBOOK USER ID 708793785 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | ) ) ) ) ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the __Northern__ District of __California and elsewhere__ *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    X  evidence of a crime;

    X  contraband, fruits of crime, or other items illegally possessed;

    X  property designed for use, intended for use, or used in committing a crime;

    ☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 21 U.S.C. §§ 841(a)(1) and 846, and the application is based on these facts:

    X  Continued on the attached affidavit, which is incorporated by reference.

    ☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_s/ Shane M. Gosnell_
*Applicant's signature*

Shane M. Gosnell, Special Agent, HSI
*Printed name and title*

Sworn to before me and:  ☐  signed in my presence.
                      ☒  submitted, attested to, and acknowledged by reliable electronic means.

Date:  __6/9/20__

*Judge's signature*

City and state:  __Grand Junction, CO__         Gordon P. Gallagher-USMJ
*Printed name and title*

## AFFIDAVIT

I, Shane M. Gosnell, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief

### INTRODUCTION AND AGENT BACKROUND

1)        I am a Special Agent with Homeland Security Investigations ("HSI"), and have been employed with HSI since January 2019.  I have been employed as a law enforcement officer for approximately 10 years.  As part of my duties, I investigate criminal violations of the Controlled Substances Act, and I have testified in judicial proceedings for violations of laws concerning controlled substances.  During my time in law enforcement, I have participated in numerous drug trafficking investigations, including investigations that have resulted in felony arrests for violations of Title 21, United States Code, Sections 841 and 846.  I have been involved in various types of electronic surveillance, in the execution of search and arrest warrants, and in the debriefing of defendants.  As part of my training and experience, I have participated in investigations involving electronic evidence, emails, text messages, and the Internet.

2)        I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

3)      The information contained within the affidavit is based on my personal observations, my training and experience, and information imparted to me by other law enforcement officers and witnesses.  Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause that evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 (the "Subject Offense(s)") are present at the location described.

4)      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the Subject Offense(s) have been committed by Artur BEDNARZ as well as others who are currently known and unknown.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## BACKGROUND ON FACEBOOK

5)      Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

6)      Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state,

2

and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

7)      Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

8)      Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

9)      Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations

to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

10)     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when he or she uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

11)     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

12)     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

13)     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as

webpages or content on third-party (i.e., non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

14)     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

15)     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

16)     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

17)     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

18)     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

19)     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

20)      Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group.  Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

21)      Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

22)      Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

23)      Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date),

6

the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

24)      As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of

7

Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

25)     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## **PROBABLE CAUSE**

26)     On December 10, 2019, troopers with the Colorado State Patrol conducted a traffic stop on a vehicle driven by an individual who would later become a cooperating defendant ("CD").  A consent search of the vehicle led to the discovery and seizure of approximately 150 pounds of Cocaine.  The CD, a citizen and resident of Canada, was arrested.

27)     On December 18, 2019, HSI agents with Homeland Security Investigations obtained a federal search warrant for a laptop computer and a cellular telephone in the possession of the CD at the time of his arrest.  A search of the iPhone and laptop revealed the CD was Facebook "friends" with Artur BEDNARZ.  The search also revealed BEDNARZ's Facebook username as "artur.bednarz.90" and listed BEDNARZ both as a Facebook "friend" and

"Facebook messenger" contact with phone number 416-821-1409.  Further search revealed the CD was communicating with phone number 416-821-1409, an individual identified in the phone as "Art."  These communications were primarily through the cellular phone application "Signal."

28)     On the date and time of the traffic stop, the CD sent multiple messages in "Signal" to the contact "Art" stating, "I'm Busted in Colorado," "Before Grand Junction."  "Art" responded "What happened," "Are you ok."  The CD stated, "Busted," "He's looking in the truck," "Contact [identified individuals] on Facebook," "I will get a lawyer and won't speak," "I'm in the side of the road."  "Art" responded with a "thumbs up" emoji and the conversation stopped.  Forensic analysis of the phone indicates the CD also communicated via "Facebook Messenger" on December 10, 2019.  The analysis, however, was unable to determine who the CD communicated with through "Facebook Messenger."

29)     Following his arrest, the CD agreed to cooperate in the investigation.  The CD identified Artur BEDNARZ as an organizer for a Transnational Drug Trafficking Organization (TDTO) transporting cocaine from California to Canada.  The CD was presented with a photo lineup of six individuals, provided instructions, and asked whether he recognized any of the individuals.  The CD immediately identified the photograph of individual #4 as "Artur BEDNARZ."  This photo was in fact a photograph of BEDNARZ.

30)     The CD described BEDNARZ as a businessman, and the owner/operator of a hardwood flooring store in Canada.  A check of databases revealed BEDNARZ is the owner of Trafalgar Hardwood Floors, Inc., located at 2396 Queensway Drive Burlington, Ontario, Canada L7R 3T3.

31)     The CD stated that BEDNARZ was directly involved in the organization and transportation of the approximately 150 pounds of cocaine seized on December 10, 2019.  The

CD also stated BEDNARZ was responsible for at least four other trips transporting cocaine from California to Canada.  The CD estimated the shipments, which the CD was also involved with, all involved a similar amount—approximately 150 pounds—of cocaine.

32)     The CD said BEDNARZ provided vehicles to the individuals he was paying to transport the cocaine.  The vehicles were registered to BEDNARZ prior to being sold/registered to the individuals transporting cocaine on behalf of the TDTO and BEDNARZ.  The CD was able to identify two vehicles used by BEDNARZ and the CD to transport cocaine: a 2017 Honda Ridgeline and a 2012 Toyota RAV4.  The CD was stopped in the 2017 Honda Ridgeline on December 10, 2019.  Record checks indicate the 2017 Honda Ridgeline driven by the CD on December 10, 2019, was registered to BEDNARZ's business from March 22, 2019, until it was registered to the CD on August 22, 2019.

33)     The CD stated the other four trips took place in approximately the end of July 2019 to the first of August 2019, the end of August 2019 to the first of September 2019, the first of November 2019, and the end of November 2019, respectively.  The CD further stated the Toyota RAV4 was used on the first trip.  The CD stated that this vehicle was driven from Canada into the United States via the Queenston Bridge at Niagara Falls, NY and driven to Newport Beach, CA.

34)     A review of DHS and LPR databases corroborates the descriptions of trips provided by the CD. More specifically, a check of Department of Homeland Security databases revealed the following:

a)     On July 25, 2019, the Toyota RAV4 crossed inbound into the United States from Canada at Lewiston Queenston Bridge at Niagara Falls, NY.

b)     On August 29, 2019, the Honda Ridgeline crossed inbound into United

States from Canada at Buffalo Peace Bridge in Buffalo, NY.

35)     Similarly, LPR information shows trips from CA headed east in the general time frames described by the CD.

36)     The CD described the transportation/distribution operation.  Vehicles used in the transportation of the cocaine from California were stored in storages units in the Los Angeles, CA area.  BEDNARZ would meet the individual he was paying to transport the cocaine in California.  BEDNARZ would organize with the source of the cocaine for a shipment. BEDNARZ would be contacted by the source advising the shipment was ready.  BEDNARZ would rent a vehicle in California to meet with the source to pick up the shipment of cocaine in a public place (generally a parking lot) in the Los Angeles, CA area.  BEDNARZ transported the cocaine back to a storage unit where the cocaine was offloaded into one of the transport vehicles. The driver of the vehicle would depart California and drive to the Toledo, OH area.  The CD stated BEDNARZ would fly from California to Chicago, rent a vehicle, and drive and meet the driver in the Toledo, Ohio area.  BEDNARZ and the driver would take the shipment of cocaine to a location along the roadway specified by BEDNARZ.  A semi-truck, or some other commercial vehicle, would be parked along the roadway as if it was broken down. BEDNARZ and the driver would pull in front of the commercial vehicle, an individual would exit the commercial vehicle and would retrieve the shipment of cocaine for transportation across the U.S./Canada border in the commercial vehicle.

37)     On December 10, 2019, at the time of the CD's arrest, law enforcement located the cocaine in a factory compartment in the bed of the Honda Ridgeline.  The CD advised when using the Toyota RAV4 the cocaine was concealed and transported in an aftermarket manufactured compartment under the rear deck of the cargo area of the RAV4.  Aftermarket

manufactured compartments are constructed strictly for the purpose of concealment of contraband and to avoid detection by law enforcement.

38)     At the time of the CD's arrest, law enforcement located a business card for a Public Storage account.  HSI agents served Public Storage with a subpoena for records.  In response, agents received account information showing the CD was the leasee of Public Storage unit #1013 located at 2075 Newport Blvd, Costa Mesa California 92627.  The lease on the unit had been paid through December 31, 2019.  The unit had been accessed just prior to the arrest of the CD.

39)     HSI agents also served multiple hotels with administrative subpoenas for information regarding records of accounts and stays for Artur BEDNARZ and the CD. Subpoena return information obtained by HSI corroborates statements made by the cooperating defendant concerning travel and hotels stays made by the CD and BEDNARZ during the transportation of cocaine.

40)     The CD stated that during one of the trips he observed BEDNARZ receiving text messages and 'Facebook messenger" messages on his iPhone.  Shortly after receiving the messages, BEDNARZ told the CD they needed to leave to transfer the cocaine to the semitruck.

41)     The CD said BEDNARZ uses multiple techniques to avoid law enforcement detection.  BEDNARZ used multiple cell phones to communicate, frequently cleared memory on the cell phones, used code when communicating by cell phone, spoke in Polish, used various cell phone applications to communicate (E.g. "Signal App"/"Facebook Messenger"), used various forms of payment to include cash and credit card, rented vehicles to assist in the facilitation of the delivery of the cocaine, and took domestic flights from California to Chicago and back to California prior to flying back to Canada.

42)      The CD stated BEDNARZ occasionally asked drivers of the load vehicles to purchase phones on his behalf.  These phones were used for communication and to avoid detection during the transportation of the cocaine.

43)      I know from my training and experience that Facebook and other cellular phone applications can be reutilized even after a device is no longer used or is destroyed.  The cellular phone application can simply be redownloaded on the new device.  The application is accessed by username and password making the applications easily utilized by individuals involved in criminal activity.

44)      On May 8, 2020, agents with HSI did an open source search for Artur BEDNARZ's Facebook account.  Agents located the account with several photos matching the description of Artur BEDNARZ.  The search revealed as of May 8, 2020, BEDNARZ's profile ID is #708793785.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

45)      I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### REQUEST FOR NON-DISCLOSURE

46)      Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), I request the Court order Facebook not to notify any other person of the existence of this warrant for the period of one year.  This request is made because notification of the existence of the warrant will result in

endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, and/or cause the target to change his behavior or notify other coconspirators.

47)     For the same reasons, I respectfully request that this affidavit and the Court's Order be RESTRICTED at level 3 until further order of this Court.

## CONCLUSION

48)     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving it on Facebook.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

49)     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).

50)     Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of the Subject Offense(s) may be located within the Facebook account described in Attachment A.

51)     I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

_s/  Shane M. Gosnell_____

Shane M. Gosnell, Special Agent
Homeland Security Investigations

Subscribed, attested to, and acknowledged by reliable electronic means on June ___9___, 2020.

_____
Gordon P. Gallagher
UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by Jeremy Chaffin, Assistant United States Attorney.

## <u>ATTACHMENT A</u>

**Property to be Searched**

This warrant applies to information associated with the Facebook user ID 708793785 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A for the time period of January 2017 to present:

(a)      All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers,  group identification number, a list of users currently registered to the group, and Group Contact Info, including all contact information for the creator and/or administrator of the group and a PDF of the current status of the group profile page.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)      All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable

1

Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; videos, photographs, articles, links, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)      All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)      All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)      All "check ins" and other location information;

(h)      All IP logs, including all records of the IP addresses that logged into the account;

(i)      All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)      All information about the Facebook pages that the account is or was a "fan" of;

(k)      All past and present lists of friends created by the account;

2

ver. 2/20

(l)     All records of Facebook searches performed by the account;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.      Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 involving Artur BEDNARZ and/or anyone associated with him since January 2017, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The sale, transportation, distribution, or importation of illegal drugs or the proceeds therefrom;

ver. 2/20

(b) The transfer, sale, or disposition of vehicles used to transport or distribute illegal drugs or the proceeds therefrom;

(c) The construction or use of compartments in vehicles to transport or distribute illegal drugs or the proceeds therefrom;

(d) Travel facilitating, arranging, or furthering the sale, transportation, distribution, or importation of illegal drugs or the proceeds therefrom;

(e) Evidence indicating how, when, and where the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(f) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(g) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(h) Historical location information relevant to the crime under investigation and that helps identify the user of the account or events relating to the crime to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner and the owner's contacts;

(i) The identity of the person(s) who communicated with the user ID about matters relating to conduct described in subparagraphs (a)-(d) above, including records that help reveal their whereabouts.

4

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, Homeland Security Investigations may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

III.    **Order of Non-Disclosure**

Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), the Court orders Facebook not to disclose the existence of this search warrant to any person for the period of one year, including the subscriber, other than its personnel essential for compliance with the execution of this warrant.

ver. 2/20